UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────

CEON SIMON,

                Plaintiff,

      -against-

CITY OF NEW YORK, DETECTIVE ERIC CRUZ,
and DETECTIVE TREMAYNE EVANS,

                Defendants.
───────────────────────────────────

**MEMORANDUM & ORDER**
**16-CV-1017 (NGG) (RML)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Ceon Simon brings this action against Defendants the City of New York, Detective Eric Cruz, and Detective Tremayne Evans. (Am. Compl. (Dkt. 9).) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for malicious prosecution, denial of his right to a fair trial, and excessive detention. (*Id.*) Additionally, Plaintiff asserts a malicious prosecution claim under New York law. (*Id.*)

Defendants move for summary judgment on all claims. (Def. Mot. for Summ. J. (Dkt. 37).) For the reasons explained below, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's state and federal malicious prosecution claims as well as his excessive detention claim and DENIED with respect to his fair trial claim.

## I. BACKGROUND

### A. Facts

The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in

1

the light most favorable to Plaintiff, as the non-moving party, with all "reasonable inferences" drawn in his favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).[1]

On May 7, 2012, Jialing Ye was robbed at gunpoint at the intersection of Gold Street and Concorde Avenue in Brooklyn. (Defs. R. 56.1 Statement ("Defs. 56.1") (Dkt. 37-2) ¶¶ 1-2.) The assailant took Ye's cell phone and approximately fifteen dollars. (*Id.* ¶ 3.) The assailant then fled, quickly entering and exiting a building at 30 Prince Street as he left the scene. (*Id.* ¶ 4.) Omar Santiago, a non-party New York Police Department ("NYPD") officer who responded to the scene, observed a security camera at 30 Prince Street, which is a storage facility. (*Id.* ¶ 5.) The video showed the assailant enter the building, place what appeared to be a gun into his backpack, and leave the building. (*Id.* ¶ 6.) The video also showed that a storage facility employee was present when the assailant entered, but his identity was never documented and no NYPD officer ever obtained a statement from him. ((Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 38-1) ¶ 51.)

What happened next is disputed. Defendants claim that Santiago believes he was unable to recover the video, but do not dispute that he "may" have recovered the video that day. (Defs. Reply in Resp. to Pl. 56.1 Statement (Dkt. 39-1) ¶¶ 7-8.) Plaintiff asserts that the video was recovered and shown by "two detectives" to Gerald Latham, one of Plaintiff's teachers, and Luis Caballero, a school aide at Plaintiff's school. (*See* Pl. 56.1 ¶¶ 66-78; *see also* Decl. of Gerald Latham ("Latham Decl.") (Dkt. 38-7); Decl. of Luis Caballero ("Caballero Decl.") (Dkt. 38-9).) Both Latham and Caballero state that they know Plaintiff well; that the detectives visited the school on May 7, 2012, and showed them the video; and that they informed the detectives that the assailant in the

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all omissions and alterations are adopted.

video was not Plaintiff. (Latham Decl. at ¶¶ 2-6; Caballero Decl. ¶¶ 1-2.) Plaintiff asserts (and Defendants dispute) that these detectives were Defendants Cruz and Evans, and that Cruz and Evans did not document this exculpatory evidence. (Pl. 56.1 ¶ 78.) Cruz did create a DD-5[2] documenting the existence of the video, but the video was not vouchered or saved as evidence, forwarded to the prosecutor, or produced to Plaintiff's defense attorney. (*Id.* ¶¶ 79-81.)

Later on May 7, 2012, Evans met Ye at the 84th Precinct and instructed him to look through a series of mug shots on a NYPD photo manager system; Ye identified Plaintiff as the assailant and signed a photo of Plaintiff to document the identification. (*Id.* ¶¶ 17-22; *see also* Photo Viewing Report (Dkt. 37-11).) Plaintiff disputes this, and submits evidence showing that while one may print a log of a photo manager session, or upload the log to the NYPD electronic case management system, Defendants did not do so in this case. (Pl. 56.1 ¶¶ 17-22; Aff. of Charles Burke (Dkt. 38-16) ¶¶ 3-8.) However, Plaintiff has not produced evidence to support his assertion that the lack of these optional, electronically produced records means that the photo viewing session never happened. Accepting that good practice would be to use these features of the photo management system, Plaintiff's submitted evidence does not create a dispute of material fact as to whether Ye used the photo manager to identify Plaintiff as his assailant. (*See* Photo Viewing Report at 2.)

Cruz obtained an interpreter and interviewed Ye in Ye's native Mandarin. (Defs. 56.1 ¶ 26.) Ye stated that his assailant was someone with whom he attended high school. (*Id.* ¶ 27.) Both Ye and Simon attended Science Skills High School. (*Id.* ¶ 29.) On May 9, 2012, Cruz went to the school and arrested Plaintiff. (*Id.*) After Plaintiff was in custody, Ye identified him in a line-up. (*Id.*

---

[2] A DD-5, or complaint follow-up form, is used to document steps taken as part of an investigation. (*See, e.g.*, DD-5 (Dkt. 37-22).)

¶¶ 31-32.) Plaintiff points out, and Defendants do not dispute, that the other people in the line-up were of different ages and builds. (Pl. 56.1 ¶¶ 99-102.) Only one other person was under 20 years old, like Plaintiff, and that person was five inches shorter and 20 pounds lighter than Plaintiff. (*Id.*)

The Parties dispute whether Plaintiff made an incriminating statement to his mother during a phone call made in Cruz's presence. Defendants assert that Plaintiff called his mother from Central Booking in the presence of Cruz, and, during the call, stated "I did not rob the guy at the school park on Monday." (Defs. 56.1 ¶¶ 34-35; *see also* DD-5 (Dkt. 37-22).) Defendants allege that Plaintiff had not been informed of the location of the robbery or the gender of the victim when he made this statement. (Defs. 56.1 ¶ 34.) Cruz documented Plaintiff's alleged statement in a DD-5 that was later provided to the prosecutor. (*Id.* ¶ 35; DD-5.) Plaintiff, however, denies making this statement. (Pl. 56.1 ¶ 34; Tr. of Oct. 12, 2017 Dep. of Ceon Simon ("Simon Dep.") (Dkt. 38-3) at 53:14-54:9.) While Defendants assert that the phone call was made from Central Booking (*see* Defs. 56.1 ¶ 34), the DD-5 indicates that the call was made from the 84th Precinct (*see* DD-5). Plaintiff testified that he did not make any phone calls from the precinct. (Simon Dep. at 53:16-17.)

Ye testified before a grand jury about the incident, and the grand jury indicted Plaintiff for robbery in the first degree, robbery in the third degree, petit larceny, and attempted assault in the third degree. (Defs. 56.1 ¶¶ 40, 42.) Plaintiff was incarcerated at Rikers Island for a little more than one month before bail was posted on his behalf. (Pl. 56.1 ¶¶ 106, 108.) In April 2015, all charges against Plaintiff were dismissed in "the interest of justice." (Tr. of April 22, 2015 Proceedings (Dkt. 43-1); *see also* Defs. 56.1 ¶ 44.)

### B. Procedural History

Plaintiff filed his complaint on March 1, 2016 (Compl. (Dkt 1)), and amended it on June 29, 2016 (Am. Compl.). Defendant City of New York filed its answer on July 13, 2016 (City of New York Answer (Dkt. 10)) and Defendants Cruz and Evans filed their answer on December 16, 2016 (Cruz & Evans Answer (Dkt. 17)). After discovery, the Defendants filed a fully briefed motion for summary judgment on September 28, 2018. (*See* Mot. for Summ. J.; Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 37-1); Mem. in Opp. to Mot. for Summ. J. ("Opp.") (Dkt. 38); Reply in Further Supp. of Mot. for Summ. J. ("Reply") (Dkt. 39).) In August 2019, the Parties filed supplemental briefing on two cases—*Lanning v. City of Glens Falls*, 908 F.3d 19 (2d Cir. 2018) and *McDonough v. Smith*, 139 S. Ct. 2149 (2019)— that were decided after the original briefing for the instant motion was complete. (*See* Suppl. Mem. in Support of Mot. for Summ. J. ("Suppl. Mem.") (Dkt. 43); Suppl. Opp. to Mot. for Summ. J. (Dkt. 44); Suppl. Reply (Dkt. 45).)

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y.

2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

"To determine whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" *Mikhaylov v. Y & B Trans. Co.*, No. 15-CV-7109 (DLI), 2019 WL 1492907, at *3 (E.D.N.Y. Mar. 31, 2019) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

### III. DISCUSSION

#### A. Federal and State Malicious Prosecution Claims

##### 1. Section 1983 Malicious Prosecution Claim

"In the absence of federal common law, the merits of a claim for malicious prosecution under § 1983 are governed by state law." *Dufort v. City of New York*, 874 F.3d 338, 350 (2d Cir. 2017). In New York, the elements of a malicious prosecution claim are "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice." *Id.* (quoting *Smith-Hunter v. Harvey*, 734 N.E.2d 750, 752-53 (N.Y. 2000)). In *Lanning*, the Second Circuit reaffirmed its holding in *Singleton v. City of New York*, 632 F.2d 185, 195 (2d Cir. 1980), that a plaintiff alleging malicious prosecution under § 1983 can only satisfy the favorable termination element by showing that "the prosecution terminated in some manner indicating that the person was not guilty of the offense charged." *Lanning*, 908 F.3d at 26 (quoting *Singleton*, 632 F. 3d at 194-95). *Lanning* is explicit that "a

dismissal in the interest of justice [that] leaves the question of guilt or innocence unanswered . . . cannot provide the favorable termination required" for a § 1983 malicious prosecution claim. *Id.* at 28-29 (quoting *Hygh v. Jacobs*, 961 F.2d 359, 367-68 (2d Cir. 1992)).

Here, the charges against Plaintiff were dismissed "in the interest of justice," and the dismissal did not affirmatively indicate Plaintiff's innocence. (*See* Tr. of April 22, 2015 Proceedings); *see also Lanning*, 908 F.3d at 28-29. Therefore, Plaintiff's malicious prosecution claim under § 1983 fails as a matter of law, and Defendants' motion for summary judgment on this claim is GRANTED.

2. New York Malicious Prosecution Claim

"[F]or malicious prosecution claims brought under New York law, federal courts must faithfully apply New York tort law." *Lanning*, 908 F.3d at 28. While the elements for malicious prosecution under New York law are identical to those under § 1983, *see Smith-Hunter*, 734 N.E.2d at 752-53, the standard for a favorable termination is different. In *Cantalino v. Danner*, 754 N.E.2d 164 (N.Y. 2001) the New York Court of Appeals held that "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." *Id.* at 167.

However, even assuming Plaintiff's dismissal meets the favorable termination requirement, his New York malicious prosecution claim fails because he is unable to show the absence of probable cause for the criminal proceeding. *See Smith-Hunter v. Harvey*, 734 N.E.2d at 752-53. "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). When a malicious prosecution plaintiff has been indicted by a

7

grand jury, "New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015). A malicious prosecution plaintiff must "establish what occurred in the grand jury, and [] further establish that those circumstances warrant a finding of misconduct sufficient to erode the premise that the Grand Jury acts judicially." *McClennon v. New York City*, No. 13-CV-128 (KAM), 2018 WL 2943565, at *17 (E.D.N.Y. June 11, 2018) (quoting *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004)).

Here, Plaintiff asserts, *inter alia*, that Defendants' failed to properly voucher, save, and produce the security video; that they failed to document and forward the exculpatory statements of Latham and Caballero; and that Cruz fabricated evidence that was later sent to the prosecutor. However, none of this alleged misconduct relates to "what occurred in the grand jury," *McClennon*, 2018 WL 2943565, at *17, which was limited to Ye's testimony identifying Plaintiff as his assailant.

Plaintiff relies on *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) for the proposition that the presumption of probable cause arising from an indictment "is rebuttable, and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts [or] that they have misrepresented or falsified evidence or otherwise acted in bad faith." *Id.* Plaintiff argues that Defendants' actions in withholding evidence from the prosecutor—including the video of the incident—overcome the presumption here. (*See* Opp. at 12-14.) *McClellan* does not help Plaintiff. There, the police officer acted "solely in order to further the officer's own personal goals," and the resulting indictment was a product of that officer's bad acts. *McClellan*, 439 F.3d at 146. Here, the indictment was based not on the bad acts

of Evans or Cruz, but on the eyewitness testimony of Ye. (*See* Defs. 56.1 ¶¶ 40-42.) Even crediting Plaintiff's assertion that Evans and Cruz withheld significant evidence from the prosecutor, that evidence would not have been enough to "conclusively establish [] [P]laintiff's innocence" in light of Ye's first-hand eyewitness account. *See Stukes v. City of New York*, No. 13-CV-6166 (NGG), 2015 WL 1246542, at *5 (E.D.N.Y. Mar. 17, 2015).

Because Plaintiff has not overcome the presumption of probable cause arising from the grand jury indictment, Defendants' motion for summary judgment on Plaintiff's state law malicious prosecution claim is GRANTED.

### B. Fair Trial Claim

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). To prevail on a fair trial claim based on the fabrication of information, a plaintiff must show that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016).

#### 1. Effect of *McDonough* on Fair Trial Claims

Before addressing Plaintiff's claim in full, the court first considers the threshold issue of whether *McDonough* introduced a favorable termination element for fair trial claims based on fabrication of evidence, and, if so, whether favorable termination for fabrication of evidence claims is analyzed under the same standard as the favorable termination requirement for malicious prosecution

9

claims. As explained below, the court assumes without deciding that *McDonough* introduced a favorable termination element into Plaintiff's fair trial claim and finds that Plaintiff's dismissal in the interest of justice meets the favorable termination requirement.

The primary question in *McDonough* was when the statute of limitations for a § 1983 fabrication of evidence claim begins to run. *McDonough,* 139 S. Ct. at 2153. The Court's analysis relied heavily on its prior decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), specifically on *Heck*'s "pragmatic concerns . . . [of] avoiding parallel criminal and civil litigation over the same subject matter and the related possibility of conflicting civil and criminal judgments." *McDonough*, 139 S. Ct. at 2157 (citing *Heck*, 512 U.S. at 484-85). Seeking to respect "core principles of federalism, comity, consistency, and judicial economy," *id.* at 2158, the Court concluded that the statute of limitations for a fabrication of evidence claims "does not begin to run until the criminal proceedings against the defendant (*i.e.,* the § 1983 plaintiff) have terminated in his favor." *Id.* at 2154-55.

Only a few district courts in this circuit have considered *McDonough*'s impact on § 1983 fair trial claims. In *Ross v. City of New York*, No. 17-CV-3505 (PKC), 2019 WL 4805147 (E.D.N.Y. Sept. 30, 2019), the court "assume[d] without deciding[] that a favorable termination of Plaintiff's underlying criminal prosecution is necessary to permit her to bring a fair trial claim," but found that an Adjournment in Contemplation of Dismissal ("ACD") qualified as a favorable termination. *Id.* at *8; *see also Colon v. City of Rochester*, No. 17-CV-6160L (DGL), --- F. Supp. 3d ---, 2019 WL 6629276, at *16 n.7 (W.D.N.Y. Dec. 6, 2019) (following *Ross*); *Wellner v. City of New York*, 393 F. Supp. 3d 388, 397 (S.D.N.Y. 2019) (finding that a plaintiff met *McDonough*'s favorable termination requirement based on the dismissal of certain charges in exchange for a guilty plea on another charge); *but see Goldring v. Donawa*, No. 16-CV-5651 (KAM), 2019 WL

4535507, at *4 (E.D.N.Y. Sept. 19, 2019) (a guilty plea is not a favorable termination).

The court in *Miller v. Terrillion*, No. 16-CV-52 (ENV), --- F. Supp. 3d ---, 2020 WL 549356 (E.D.N.Y. Jan. 30, 2020) reached a different conclusion. In that case, an allegedly fabricated statement was the "sole basis for the trespassing charge brought against" the plaintiff, a charge that was eventually dismissed pursuant to an ACD. *Id.* at *6. *Miller* noted that, prior to *McDonough*, "courts in this circuit . . . were of accord that ACDs did not preclude fair trial claims of any stripe" and that *McDonough* "did not go as far as to impose wholesale a favorable termination requirement on all fair trial claims." *Id.* at *4. However, because the court determined that the fair trial claim would "attack[] . . . the legality of the prosecution against" the plaintiff, it held that, post-*McDonough*, he "may not bring [his] fair trial claim, the success of which would necessarily undermine the validity of a prosecution settled only by his acceptance of an ACD." *Id.* at *6 (citing *Lanning*, 908 F.3d at 26).

The court finds *Ross*'s approach more persuasive. Assuming, as did *Ross*, that the dicta in *McDonough* introduced a favorable termination element into Plaintiff's fair trial claim, it does not follow that the strict "affirmative indication of innocence" standard necessarily applies.[3] To hold otherwise would be to abandon the

---

[3] Defendants argue that because the Court in *McDonough* used the words "favorable termination," the court must apply the malicious prosecution "affirmative indication of innocence" standard to Plaintiff's fair trial claim. *(See* Suppl. Mem. at 3; Suppl. Reply at 2-3.) This follows neither from *McDonough* nor from *Lanning*. In *McDonough*, the Court was careful to note that "[b]ecause McDonough's acquittal was unquestionably a favorable termination, we have no occasion to address the broader range of ways a criminal prosecution (as opposed to a conviction) might end favorably to the accused." *McDonough*, 139 S. Ct. at 2160 n.10. The Court further

11

longstanding distinction between malicious prosecution claims and fair trial claims based on the fabrication of evidence. As the Second Circuit explained in *Lanning*, "[a] § 1983 claim for malicious prosecution essentially alleges a violation of the plaintiff's right under the Fourth Amendment to be free from unreasonable seizure." *Lanning*, 908 F.3d at 28. Because "[t]he touchstone of the Fourth Amendment is reasonableness," an affirmative indication of innocence is necessary to allege malicious prosecution because, "absent an affirmative indication that the person is innocent of the offense charged, the government's failure to proceed does not necessarily imply a lack of reasonable grounds for the prosecution." *Id.*

In contrast, a fair trial claim based on the fabrication of evidence arises out of the principle that "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee" and that to find otherwise "would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti*, 124 F.3d at 130. Because the fabrication of evidence is definitionally unreasonable, the favorable termination requirement for a fair trial

---

acknowledged the potential need for "a context-specific and more capacious understanding of what constitutes favorable termination for purposes of a § 1983 false-evidence claim." *Id.*

Also, *Lanning* did not seek to enshrine a single favorable termination standard for all § 1983 claims, but instead sought "to dispel any confusion among district courts about the favorable termination element of a § 1983 malicious prosecution claim." *Lanning*, 908 F.3d at 25; *see also id.* ("Our prior decisions requiring affirmative indications of innocence to establish 'favorable termination' . . . govern § 1983 malicious prosecution claims . . . ."); *id.* at 28-29 (reiterating that an affirmative indication of innocence is required to establish favorable termination for a "the constitutional tort of malicious prosecution in an action pursuant to § 1983").

claim does not stem from the nature of the constitutional violation, but from the prudential best practice of avoiding conflicting civil and criminal judgments resulting from parallel civil and criminal litigation.[4] *McDonough*, 139 S. Ct. at 2157 (citing *Heck*, 512 U.S. at 484-85).

In sum, *McDonough* does not alter the enduring distinction between malicious prosecution and fair trial claims; the two claims arise out of different constitutional rights, protect against different constitutional injuries, and implicate different constitutional concerns. Favorable termination is required for a fair trial claim insofar as it is necessary to avoid the risk that a judgment for the plaintiff on his civil claim would conflict with or impugn the validity of the earlier criminal proceeding against him. *McDonough*, 139 S. Ct. at 2157-58. Here, the risk is nonexistent. A jury verdict that Cruz violated Plaintiff's due process right to a fair trial by falsifying evidence would not conflict with or challenge the validity of the dismissal of charges against Plaintiff in the interest of justice. Therefore, Plaintiff's dismissal in the interest of justice is a favorable termination for the purposes of his § 1983 fair trial claim.

    1. Application

Defendants primarily assert that Plaintiff cannot successfully establish the third element of his fair trial claim, that the falsified statement was "likely to influence a jury's verdict." *Garnett*, 838 F.3d at 279; (*see also* Mem. at 18-19). They contend that the fabricated statement was not material because it did not appear in

---

[4] At least one other court in this district has made a similar distinction. Months after holding that an ACD constitutes a favorable termination for a fair trial claim, *see Ross*, 2019 WL 4805147, ay *7, Judge Chen held in *Turyants v. City of New York*, No. 18-CV-841 (PKC), 2020 WL 804900 (E.D.N.Y. Feb. 18, 2020) that "[i]t is settled law in the Second Circuit that an ACD . . . is not a favorable outcome for purposes of malicious prosecution claims." *Id.* at *6.

the criminal complaint, and that because "it could never have been presented to the jury" because it wasn't properly disclosed, "*ipso facto*, it could not have influenced the jury." (*Mem.* at 19.)

This misconstrues the law around the materiality of fabricated evidence. "Whether fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case." *Ashley v. Civil*, No. 14-CV-5559 (NGG), 2019 WL 3428522, at *4 (E.D.N.Y. July 30, 2019) (M&O on Mot. for J. as a Matter of L.). "[F]abricated evidence is material when it may affect the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action or [when it] could influence the prosecutor's assessments of the strength of the case." *Id.* (quoting *Garnett*, 838 F.3d at 277). Plaintiff's purported statement, implying that he independently knew the location of the robbery and the gender of the victim (*see* DD-5), is powerfully incriminating.[5] It could have easily "influence[d] the prosecutor's assessments of the strength of the case" and may well have "affect[ed] the prosecutor's decision to pursue charges rather than to dismiss the complaint." *Ashley*, 2019 WL 3428522, at *4.

Defendants' argument that Plaintiff cannot establish a causal connection between the fabricated statement and Plaintiff's deprivation of liberty is similarly flawed. If a jury were to find that the falsified statement influenced the prosecutor's decision to pursue charges, it could also find that Plaintiff suffered a deprivation of liberty "as a result of" the fabricated statement. *See Ashley v. City of New York*, No. 14-CV-5559 (NGG), 2018 WL

---

[5] In their brief, Defendants cite several cases standing for the proposition that there is no constitutional violation when a police officer fabricates a piece of evidence but then does not use it against a criminal defendant. (*See* Mem. at 19 (citing, *e.g.*, *Zahrey v. Coffee*, 221 F.3d 342, 348 (2nd Cir. 2000)).) This argument is somewhat perplexing, as Defendants do not dispute that the allegedly fabricated statement was sent to the prosecutor. (*See* Defs. 56.1 ¶ 35.)

6419951, at *3 (E.D.N.Y. Dec. 6, 2018) (M&O on Mot. for Recons. of Partial Grant of Summ. J.) (citing *Garnett* 838 F.3d at 279-80).

Because Defendants have not demonstrated that they are entitled to judgment as a matter of law on Plaintiff's fair trial claim, their motion for summary judgment is DENIED as to that claim.

### C. Excessive Detention Claim

Plaintiff alleges in his opposition to the instant motion that he "has established a prima facie case of . . . excessive detention." (Opp. at 20.) As an initial matter, it is not immediately clear that this claim was included in the amended complaint. There, Plaintiff alleges that Defendants "violated the Plaintiff's . . . rights under the Fourth . . . Amendement[] . . . [by] unreasonably seiz[ing] the Plaintiff." (Am. Compl. ¶ 60.) It is questionable whether this is a "short and plain statement" of an excessive detention claim as required by Federal Rule of Civil Procedure 8(a).

However, even assuming that Plaintiff stated a claim for excessive detention under the Fourth Amendment, he is incorrect that he has established a prima facie case. In *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007), the Second Circuit held that the Fourth Amendment protects against a "sustained detention stemming directly from the law enforcement officials' refusal to investigate available exculpatory evidence." *Id.* at 208. There, the plaintiff was in custody for over two months despite the fact that police officers had sole possession of and deliberately lied about a video that clearly exonerated him. *Id.* Here, drawing all reasonable inferences in favor of Plaintiff, if Cruz possessed and withheld the video of the assailant and the statements from Latham and Caballero, Plaintiff still does not state a prima facie case for an excessive detention claim. Because Ye identified Plaintiff as the assailant on multiple occasions, Plaintiff's detention did not "stem[] directly from the law enforcement officials' refusal to

investigate available exculpatory evidence," *id.*, and his excessive detention claim therefore fails as a matter of law.

## IV. CONCLUSION

For the reasons explained above, Defendants' (Dkt. 37) motion for summary judgment is GRANTED with respect to Plaintiff's state and federal malicious prosecution claims as well as his excessive detention claim and DENIED with respect to his fair trial claim. The Parties are DIRECTED to contact the chambers of Magistrate Judge Robert M. Levy regarding next steps in the case

SO ORDERED.

Dated:    Brooklyn, New York
           March 19, 2020

                                            /s/ Nicholas G. Garaufis
                                            NICHOLAS G. GARAUFIS
                                            United States District Judge