```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

CEON SIMON,

                        Plaintiff,

         -against-

DETECTIVE ERIC CRUZ, DETECTIVE TREMAYNE EVANS, and CITY OF NEW YORK,

                      Defendants.

**MEMORANDUM & ORDER**

16-CV-1017 (NGG) (RML)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Ceon Simon seeks reconsideration of this court's March 19, 2020 Memorandum and Order ("M&O"). (*See* Pl. Mot. for Recon. ("Pl. Mot") (Dkt. 49); Defs. Opp. to Pl. Mot for Recon. (Dkt. 51); Pl. Reply (Dkt. 52).) Defendants also seek reconsideration of the M&O. (*See* Defs. Mot. for Recon. ("Defs. Mot.") (Dkt. 47); Pl. Opp to Defs. Mot. for Recon. ("Pl. Opp.") (Dkt. 48); Defs. Reply (Dkt. 50).) Defendants additionally request that Defendant Evans be dismissed from the case. (*See* Defs. Mot.)

For the following reasons, Plaintiff's motion for reconsideration is DENIED, Defendants' motion for reconsideration is likewise DENIED, and Defendants' request that Evans be dismissed from the case is GRANTED.

## I. LEGAL STANDARD

The standard for a motion for reconsideration is "strict." *Schrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).[1] A party seeking reconsideration must establish: "(1) that the court overlooked controlling decisions or data; (2) that there has been a change in decisions or data; (3) that new evidence has become

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

available; or (4) that reconsideration is necessary to correct a clear error or prevent manifest injustice." *Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, No. 17-CV-6255 (NGG), 2019 WL 6134164, at *1 (E.D.N.Y. Nov. 19, 2019). Courts narrowly construe and strictly apply these principles in order to avoid "repetitive arguments on issues that have already been considered fully by the court." *Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 958 F. Supp. 2d 399, 402 (E.D.N.Y. 2013) (citation omitted).

## II. DEFENDANTS' MOTION FOR RECONSIDERATION[2]

Defendants seek reconsideration of the denial of summary judgment on Plaintiff's fair trial claim. (Defs. Mot. at 4-6.) At the outset, it is worth reiterating just how abhorrent the Second Circuit found the behavior of which Cruz is accused:

> No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable corruption of the truth-seeking function of the trial process.

*Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997). After this condemnation, the *Ricciuti* panel provided a simple

---

[2] The court assumes familiarity with the factual and procedural background of this case, which is set forth in greater detail in the M&O. *See Simon v. City of New York*, No. 16-CV-1017 (NGG), 2020 WL 1323114, at *1-2 (E.D.N.Y. Mar. 19, 2020).

standard for establishing a fabrication of evidence claim: "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Id.* Adopting a "formulation . . . derived from the . . . language in *Ricciuti*," *Garnett v. Undercover Officer C0039* enumerates the elements of a fair trial claim as follows: "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." 838 F.3d 265, 279 (2d Cir. 2016).

Defendants believe the court committed "clear error" in analyzing the third element.[3] (Defs. Mot. at 4-6.) While Defendants concede that a plaintiff can show that fabricated evidence was likely to influence a jury decision by showing that the fabricated evidence was material to the prosecutor's case, they argue that materiality can only be established by proof that the prosecutor did in fact rely on the fabricated evidence. (Defs. Mot. at 4-5.) This argument misreads the applicable case law and attempts to fundamentally alter the nature of a fabrication of evidence claim. As the court has already explained, district courts in this circuit have relied on *Ricciuti* and *Garnett* to hold that "fabricated evidence is material when it may affect the prosecutor's decision to

---

[3] Defendants also ask the court to reconsider its holding that favorable termination for a fair trial claim does not require the same affirmative indication of innocence that is required for a malicious prosecution claim. (Defs. Mot. at 6-7.) In so requesting, Defendants append two district court decisions "for the court to consider." (Defs. Mot. at 8.) Defendants concede that they do not rely on new controlling case law (Defs. Reply at 5), and they do not argue that there is new evidence or that reconsideration is necessary to "correct a clear error or prevent manifest injustice." *Kelwin Inkwel*, 2019 WL 6134164, at *1. Therefore, they have no basis to seek reconsideration of this issue.

pursue charges rather than to dismiss the complaint without further action or could influence the prosecutor's assessments of the strength of the case." *Simon v. City of New York*, No. 16-CV-1017 (NGG), 2020 WL 1323114, at *6 (E.D.N.Y. Mar. 19, 2020); *see also Ashley v. Civil*, No. 14-CV-5559 (NGG), 2019 WL 3428522, at *4 (E.D.N.Y. July 30, 2019); *Hanson v. New York City*, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018). As these cases make clear, one can show that fabricated evidence is material by demonstrating that it *may* affect or *could* influence the prosecutor's decision-making; the case law does not require a showing that it *did* affect the decision-making.[4]

Further, Defendants' argument elides the fact this second level analysis is unnecessary where, as here, an officer "fabricat[ed] and forward[ed] to prosecutors a known false confession almost certain to influence a jury's verdict." *Ricciuti*, 124 F.3d at 130. Defendants attempt to distinguish the "out-and-out confession" in *Riccuiti* by asserting that here, the fabricated statement was actually "a denial of the crime." (Defs. Reply at 3.) This doesn't hold water. While the alleged fabricated statement was a factual denial, its implication—that Plaintiff independently knew the location of the robbery and the gender of the victim—has the same functional effect as a confession.

Finally, Defendants complain that the court improperly relied on "speculation, conjecture, and surmise," and remind the court that

---

[4] Again, *Ricciuti* held that a constitutional violation arises "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors." 124 F.3d at 130. The potential liability of an officer like Cruz depends on the type of evidence fabricated and whether that evidence is forwarded to the prosecutor. Contrary to what Defendants believe, it does *not* depend on what the prosecutor does with the false evidence. To cabin an officer's potential liability based on third-party actions taken after the constitutional violation is complete would be to give the court's blessing to "an unacceptable corruption of the truth-seeking function of the trial process." *Ricciuti*, 124 F.3d at 130.

"[t]his is summary judgment, not a motion to dismiss." (Defs. Mot. at 4-5.) Defendants, though, seem to confuse Plaintiff's trial and summary judgment burdens. They assert that "the [c]ourt is necessarily creating, by its decision, a presumption that incriminating statements *ipso facto* satisfy the 'likely to influence a jury's verdict' element of the cause of action." (Defs. Reply at 5.) Of course, it is not the court's place to determine at summary judgment whether a plaintiff's evidence "satisfies" an element of a claim. *See generally* Fed. R. Civ. P. 56. That duty is reserved for the jury at trial. What is for the court to decide is whether, drawing all inferences in favor of the Plaintiff, the evidence would "permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016). All of Defendants' handwringing does not change the simple fact that they failed to meet their summary judgement burden of showing that no reasonable juror could find that the fabricated statement—for all intents and purposes a false confession—was likely to influence a jury verdict.[5] Here, as in *Ricciuti*, "a reasonable jury could find, based on the evidence, that defendants . . . violated the plaintiff['s] clearly established constitutional rights by . . . fabricat[ing] and forward[ing] to prosecutors a known false confession almost certain to influence a jury's verdict." *Ricciuti*, 124 F.3d at 130.

Based on the above, Defendants' motion for reconsideration is DENIED.

### III. PLAINITFF'S MOTION FOR RECONSIDERATION

Plaintiff asks the court to reconsider its grant of summary judgment on his excessive detention claim. (Pl. Mot. at 1.) Plaintiff argues that reconsideration is merited because the court misapplied *Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) to

---

[5] The court notes that a jury is uniquely well suited to determining whether fabricated evidence was likely to influence a jury verdict.

5

the evidence at hand. (*Id.* at 2.) It is not necessary to engage with this argument, however, because—making explicit what was strongly implied in the M&O—Plaintiff's amended complaint does not include an excessive detention claim. *See Simon*, 2020 WL 1323114 at *7.

While a "short and plain statement of the claim" is enough to satisfy Federal Rule of Civil Procedure 8, the complaint must still "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). A complaint gives fair notice of a claim when it "enable[s] the adverse party to answer and prepare for trial, allow[s] the application of res judicata, and identif[ies] the nature of the [claim] so that it may be assigned the proper form of trial." *Wynder v. McMahon*, 360 F.3d 73, 79 (2d Cir. 2004); *see also Kittay v. Kornstein*, 230 F.3d 531, 542 (2d Cir. 2000) (a complaint must give "a fair understanding of what the plaintiff is complaining about").

Here, the amended complaint did not give "fair notice" of an excessive detention claim. The amended complaint includes three causes of action. The first count, which takes up the bulk of the complaint, is for "violations of 42 USC § 1983 based upon due process violations, fabrication of evidence, and malicious prosecution."[6] (Am. Compl. (Dkt. 9) at 2.) The second count is for "attorney fees and costs under 42 USC § 1988." (*Id.* at 11.) Finally, the third count is for "malicious prosecution under state law." (*Id.* at 12.) In addition to not being explicitly referenced in causes of action, the words "excessive detention" do not appear at any point in the complaint. (*See generally id.*) The closest Plaintiff comes to identifying an excessive detention claim is in

---

[6] Borrowing from statutory interpretation the concept of *expressio unius est exclusio alterius*, Defendants could reasonably infer from the fact that Plaintiff listed three specific grounds for Defendants alleged violations of § 1983 that Plaintiff was not asserting another, unidentified violation.

6

paragraph 60 of the amended complaint, where he asserted—as one of 10 general allegations of violations of constitutional rights—that Defendants violated his "right not to be unreasonably seized." (*Id.* ¶ 60.) This, standing alone, is insufficient to give Defendants fair notice of Plaintiff's purported claim that Defendants subjected Plaintiff to "sustained detention stemming directly from [Defendants'] refusal to investigate available exculpatory evidence." *Russo*, 479 F.3d at 208.

Plaintiff argues that the "amended complaint did plead facts establishing a *Russo* claim." (Pl. Mot. at 2.) Even if true, Rule 8 requires that complaint provide both "fair notice of what the claim is *and* the grounds upon which it rests." *Adia v. Grandeur Mgmt., Inc.*, 933 F.3d 89, 92 (2d Cir. 2019) (emphasis supplied). Plaintiff's argument goes to the latter requirement, but it is insufficient for a plaintiff to plead facts supporting a claim without providing fair notice of what the claim actually is. *Wynder*, 360 F.3d at 79.

Therefore, Plaintiff's motion for reconsideration is DENIED.

## IV. DEFENDANTS' MOTION TO DISMISS DEFENDANT EVANS

Finally, Defendants request that Evans be dismissed from the case because he was not personally involved with the fabrication of evidence that is the basis for Plaintiff's fair trial claim. (Defs. Mot. at 3-4.) Plaintiff advances no argument that Evans played a role in the fabrication and forwarding to the prosecutor of the false statement. (*See generally* Pl. Opp.) Therefore, Defendants' request to dismiss Evans from the case is GRANTED.

## V. CONCLUSION

For the reasons explained above, Defendants' (Dkt. 47) motion for reconsideration is DENIED, Plaintiff's (Dkt. 49) motion for reconsideration is also DENIED, and Defendants' request that

7

Evans be dismissed from the case is GRANTED. The Clerk of Court is respectfully DIRECTED to remove Evans from the case. The Parties are DIRECTED to contact the chambers of Magistrate Judge Robert M. Levy for next steps in this case.

SO ORDERED.

Dated:   Brooklyn, New York
         June 1, 2020

      /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge